473 A.2d 189

**William BRADNEY, Thomas Andress and Robert Kerns, T/A Grove Roofing and Siding Company**

v.

**Dennis SAKELSON and Gloria Sakelson, Appellants.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1983.

Filed March 16, 1984.

Petition for Allowance of Appeal Denied July 9, 1984.

Donald A. Semisch, Willow Grove, for appellants.

Marjorie C. Lawrence, Willow Grove, for appellees.

Before SPAETH, President Judge and CIRILLO and JOHNSON, JJ.

CIRILLO, Judge:

On January 24, 1977, William Bradney, Dennis Sakelson and Ervin Bender formed a joint venture to trade as Terwood Joint Venture. These three individuals brought to the partnership various assets which they personally owned. Among the assets which Dennis Sakelson brought to the joint venture was real estate on Sunset Lane owned by him and Gloria Sakelson, his wife.[1] On October 1, 1977 Dennis Sakelson entered into an oral agreement whereby the appellee, Grove Roofing and Siding Company, agreed to install a new built-up roof on the Sunset Lane property, held by the Sakelsons as tenants by the entireties. The work was completed three weeks later and the appellee submitted a written invoice in the amount of $5446.00. On January 1, 1978 the joint venture was dissolved by a written agreement in which Dennis Sakelson consented to assume responsibility for the roof installed by the appellee.

On March 6, 1979 the appellee commenced an action in assumpsit against the Sakelsons seeking payment of the sum of $5446.00. The Sakelsons filed an Answer and New Matter denying that Dennis entered into an oral agreement for the installation of the roof, and claiming that Gloria is an improper defendant and that the written agreement, executed upon dissolution of the joint venture, is invalid. The appellee filed a reply and on March 11, 1980, oral deposition of Gloria Sakelson was taken. A hearing was

1. At no time during the existence of the joint venture was title to the real property ever transferred from the Sakelsons.

held on July 7, 1981. Following testimony and the introduction of Mrs. Sakelson's deposition into evidence, the court found that Gloria Sakelson permitted her husband to act as her agent and to contract for the improvement of jointly-owned property. The court found that the Sakelsons were obligated to the appellees in the principal amount of $5446.00. Exceptions were subsequently filed and denied and this appeal followed.

On appeal, the following questions have been presented for our review: 1) Did the trial court properly consider the facts in rendering its decision? 2) Did an agency relationship exist between the Sakelsons as husband and wife? 3) Does the Statute of Frauds bar a claim against Mrs. Sakelson? 4) Did the oral contract between Dennis Sakelson and the appellee merge into the written agreement dissolving the joint venture? 5) Did the trial court properly grant relief in this instance?

The Superior Court's scope of review in this matter is as follows:

> Our appellate role is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. *Brenna v. Nationwide Insurance Co.,* 294 Pa.Super. 564, 567, 440 A.2d 609, 611 (1982); *Metz Contracting, Inc. v. Boxer Heights, Inc.,* 261 Pa.Super. 177, 180, 395 A.2d 1373, 1375 (1978). The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. *Eddystone Fire Co. No. 1 v. Continental Insurance Cos.,* 284 Pa.Super. 260, 263, 425 A.2d 803, 804 (1981). Furthermore, the verdict winner is entitled to have the evidence considered in a light most favorable to himself. *Marryshow v. Nationwide Mutual Insurance Co.,* [306] Pa.Super. [233, 237], 452 A.2d 530, 532 (1982).

*Piccinini v. Teachers Protective Mutual Life Insurance Co.*, 316 Pa.Super. 519, 524, 463 A.2d 1017, 1021 (1983); *See also: 2401 Pennsylvania Avenue Corp. v. Federation of Jewish Agencies*, 319 Pa.Super. 228, 466 A.2d 132 (1983).

In view of this standard and after a thorough review of the record, we find that the trial court properly considered all relevant facts and amply supported its findings by competent evidence.

 The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking. Restatement (Second) of Agency, § 1, Comment b (1958). *See: Scott v. Purcell*, 490 Pa. 109, 415 A.2d 56 (1980). Taking specific note of the marital relationship, our Court has expressed the following:

> Neither husband nor wife by virtue of the relation has power to act as agent for the other. The relation is of such a nature, however, that circumstances which in the case of strangers would not indicate the creation of authority may indicate it in the case of husband or wife. Thus, a husband habitually permitted by his wife to attend to some of her business matters may be found to have authority to transact all her business affairs. Restatement, Agency 2d, § 22(b).

> The law of Pennsylvania is in accord with the Restatement. (Citations omitted).

*Tonuci v. Beegal*, 188 Pa.Super. 66, 70, 145 A.2d 885, 888 (1958); *See also:* Williston on Contracts, Vol. II, § 270 A. Moreover, under Pennsylvania law, there is a presumption with respect to property held by the entireties that either spouse has the power to act for both without specific authority, so long as the benefit of such action inures to both. *J.R. Christ Construction Co. v. Olevsky*, 426 Pa. 343, 232 A.2d 196 (1967); *Sgro v. Sgro*, 259 Pa.Super. 425, 393 A.2d 900 (1978); *Miller v. Bare*, 457 F.Supp. 1359 (W.D.Pa.1978). "The presumption then stands unless and until the other spouse establishes by a preponderance of the

evidence that, at the time the contract was made and the services were performed under it, the contracting spouse was in fact not authorized to act for and to bind her in contracting for improvement of the entireties property, the benefits of which ran in favor of both tenants by entireties." *J.R. Christ Construction Co. v. Olevsky,* 426 Pa. at 349–50, 232 A.2d at 199.

In the present case, in addition to the marital relationship, we have the testimony of Mr. Sakelson:

I had my authority, the authority from my wife in the beginning when the partnership and the joint venture were put together. She knew what was going on. I asked her, I explained to her what was going on; and I had her authority to do that then.

The only property that was not put into the Sakelson properties was our personal home; and that was the only thing she was concerned about.

The other Sakelson Properties that were put into the joint venture, I had her authority to do it. Once I had her authority, then I did it on my own.

This testimony is corroborated by the deposition testimony of Mrs. Sakelson. At the time she was deposed, Mrs. Sakelson stated: that her husband has, over many years, been in the real estate management and investment field; that he has taken ownership of various properties in her name and his; that she did not handle any part of the real estate deals; that she, when necessary, signed deeds and other papers; that she did not enter into any negotiations for the purchase or sale of any property owned by her; that it was customary for her husband to handle the problems involving these real estate deals; that she did not recall signing any papers selling the Sunset Lane property; and that she signs a lot of things and is not really concerned about what they are.

■ This evidence clearly establishes that Mr. Sakelson was authorized to and indeed did act as Mrs. Sakelson's agent in this matter. Therefore, Mrs. Sakelson is liable for the improvements made to the property held by the entire-

ties which were contracted for by her husband. *Cf., John M. Rouse, Inc. v. Logan,* 268 Pa.Super. 376, 408 A.2d 514 (1979) (Absent evidence that the husband intended to act as his wife's agent when he ordered a contractor to do work on residential property of the husband and wife, the wife could not be held liable to the contractor).

■ The Sakelsons argue that any claim against Gloria is barred by the Statute of Frauds. They cite section 3 of the statute to support their argument.

**Promise to answer for the debt of another.**

No action shall be brought whereby to charge any executor or administrator, upon any promise to answer damages out of his own estate, or whereby to charge the defendant, upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him authorized.

Act of April 26, 1855, P.L. 308, § 1, 33 P.S. § 3. The debt in this case is not the debt of another. It is the debt of Gloria Sakelson as owner of the Sunset Lane property as a tenant by the entirety. The Statute of Frauds, consequently, is inapplicable in the case at bar and a writing, signed by Gloria Sakelson, is not necessary to enforce a claim against her.

The Sakelsons also allege that the oral contract for the installation of the roof merged into the written termination agreement. Therefore, they argue, Gloria Sakelson is released from any liability under the oral contract since she was not specifically held liable under the written agreement. We disagree with this rationale.

■ Merger is a matter of intention, to be determined from the terms and subject matter of the contract, or from the conduct of the parties thereto, and where there is an evident intent to substitute one agreement for another, and consideration appears, the contract is binding. 8 P.L.E.

§ 296. The oral agreement, concerning the installation of the roof, was between Dennis Sakelson and an agent of the appellee. The written termination agreement, which delineated the debts which each partner was to assume after the joint venture ceased, involved Dennis Sakelson, William Bradney and Ervin Bender. The termination agreement does not contain an integration clause, and does not encompass the same obligations as, nor involve the same parties that are bound by, the oral agreement. Under the circumstances, we can discern no intention by the parties that the oral contract merged into the termination agreement.

Finally, the Sakelsons aver that the trial court erroneously found against Gloria on the basis of unjust enrichment. We find this averment to be absurd. The cause of action here is in contract. The trial court based its decision on the actual contract price, not on unjust enrichment.

Affirmed.

SPAETH, President Judge, concurs in the result.