597 A.2d 662

**NEWS PRINTING COMPANY, INC.**

v.

**Eric J. ROUNDY and Laine E. Roundy, Appellants.**

**NEWS PRINTING COMPANY, INC., Appellant,**

v.

**Eric J. ROUNDY and Laine E. Roundy.**

**NEWS PRINTING COMPANY, INC., Appellant,**

v.

**Eric J. ROUNDY.**

Superior Court of Pennsylvania.

Submitted July 22, 1991.

Filed Sept. 26, 1991.

Frank J. Hartye, Hollidaysburg, for Roundy, appellant (at 1899) and appellee (at 1900 and 1901).

Paul M. Puskar, Hollidaysburg, for News Printing, appellant (at 1900 and 1901) and appellee (at 1899).

Before ROWLEY, President Judge, and BECK and HOFFMAN, JJ.

ROWLEY, President Judge:

These consolidated appeals arose from two separate actions brought by News Printing Company, Inc. ("News") to

recover on a loan made to its former employee, Eric J. Roundy ("Roundy"), during the course of their employment relationship.

## I. HISTORY

The rather complex history of the instant case is as follows. In July, 1980, Harold Barnhardt ("Barnhardt"), the owner of the News, hired Roundy, who lived in Massachusetts, to work for the News as the general manager. Roundy, his wife, and their daughter moved to Hollidaysburg, Pennsylvania, where the News is located. On July 30, 1980, the News loaned Roundy $1,500.00 to enable him to pay an advance deposit on a house in Hollidaysburg which the Roundys were buying. The News also loaned Roundy $13,935.96 on September 30, 1980, for the down payment on the house. On September 30, 1980, Roundy signed an I.O.U. for $15,435.96 in which he promised to repay the loans on October 22, 1980. Roundy did not repay the loans and, on October 25, 1980, his employment with the News was terminated.

On November 13, 1980, the News instituted an action against Mr. and Mrs. Roundy, as husband and wife, to recover the loans. This action was docketed in the trial court at No. 2045 C.P. 1980. On January 21, 1981, the News instituted an action against Roundy, individually, to recover on the loans. This action was docketed in the trial court at No. 147 C.P. 1981. On December 4, 1981, Roundy filed an answer and counterclaim in the case docketed at No. 147 C.P. 1981 in which he alleged, *inter alia*, that the News had breached its employment contract with him. The two actions were consolidated for a jury trial.

On October 17, 1986, the jury found in favor of the News on its complaint against Mr. and Mrs. Roundy, docketed at No. 2045 C.P. 1980, and awarded it $15,435.96 plus interest. At No. 147 C.P. 1981 there was a stipulation for a directed verdict, in which the News was awarded $15,435.96 against Roundy. N.T. 10/16/86, at 295; N.T. 10/17/86, at 430. Also at No. 147 C.P. 1981, the jury found in favor of

Roundy on his counterclaim and awarded him $18,280.00 against the News. Following the jury's verdict, the parties filed post-trial motions, which were denied in an order entered on August 9, 1990. Judgment was entered on the verdict in favor of Roundy on November 14, 1990 and on the verdicts in favor of the News on November 20, 1990.

The parties filed notices of appeal.[1] At No. 2045 C.P. 1980, Mr. and Mrs. Roundy filed an appeal which was docketed in this Court at No. 1899 Pittsburgh 1990. Also at No. 2045, the News filed a cross-appeal, which was docketed in this Court at No. 1900 Pittsburgh 1990. Finally, at No. 147 C.P. 1981, the News filed an appeal from the judgment entered on the jury's verdict in favor of Roundy's counterclaim. This appeal was docketed in this Court at No. 1901 Pittsburgh 1990. The appeals have been consolidated for our review. On appeal, the parties have raised the following two issues:

 1) whether the evidence was sufficient to overcome the presumption of at-will employment; and

 2) whether the trial court erred in its instruction on property held by tenants by the entirety.[2]

Having carefully reviewed the record and considered the arguments presented, we affirm the judgments of the trial court.

## II. SUFFICIENCY OF EVIDENCE

In its appeal from the judgment entered in Roundy's favor on his counterclaim, the News argues that the evidence presented at trial was insufficient to overcome the

1. Initially, Roundy filed a notice of appeal on October 22, 1990, and the News filed a cross-appeal, from the trial court's order denying the parties' post-trial motions. Roundy's appeal was docketed at No. 1443 Pittsburgh 1990. The News' appeal was docketed at No. 1612 Pittsburgh 1990. In a *per curiam* order of this Court entered on February 5, 1991, both appeals were quashed because no judgments had been entered.

2. The News also argues that the trial court did not err in molding the verdict to include interest only on the salary of Roundy. However, since the Roundys do not argue on appeal that the trial court erred in so molding the verdict, we do not address this argument.

presumption of at-will employment. In reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to Roundy, as the verdict winner. Our sole task is to determine if there was sufficient evidence to sustain the verdict. *Fannin v. Cratty*, 331 Pa.Super. 326, 331, 480 A.2d 1056, 1058 (1984).

In light of the foregoing standard of review, the evidence in the instant case is as follows. In 1980, Harold Barnhardt, the sixty-year-old owner of the News, decided to hire a general manager, who would be Barnhardt's personal assistant and help him in running the News. In his search for a general manager, Barnhardt contacted Gardner Personnel, a New York City "head-hunting" agency. Eric J. Roundy, who was seeking employment in a managerial position, also contacted Gardner Personnel, and was informed of the opening at the News. On June 13, 1980, Barnhardt interviewed Roundy, then a Massachusetts resident, for the position at the News. During the interview, Barnhardt stated that, as he was sixty years old, it was time for him to cut down on his participation in the business. He further stated that he was looking for someone to oversee all aspects of the business so that he could walk away from the News knowing that it was being run effectively. N.T. 10/16/86, at 206.

Roundy expressed his interest in the job, and said he would need six months to become effective. N.T. 10/16/86, at 261. Barnhardt stated that he would give Roundy the time he needed to "get into" the job. N.T. 10/16/86, at 179, 184–85. "As part of the job offer, Mr. Barnhardt offered to help the Roundys purchase a home and pay for their moving expenses." Brief for the News, at 4; N.T. 10/15/86, at 50–52. Mr. Roundy did not accept the job on June 13, 1980. On June 21, 1980, Roundy and his wife visited Hollidaysburg. The Barnhardts took the Roundys to look for suitable houses, and Mrs. Roundy found a house in Hollidaysburg that she liked. During this visit, Barnhardt indicated that the News would loan Roundy money to enable the

Roundys to purchase a house in Pennsylvania. N.T. 10/15/86, at 50, 111–12, 117.

Barnhardt testified that he did not hire Roundy for a definite period of time, but, rather, that Roundy was on probation indefinitely from the day when he was hired. N.T. 10/15/86, at 63. However, Barnhardt admitted that he told Roundy he would give him time to "get into" the job. N.T. 10/16/86 at 179, 184–85. Roundy testified that, had he known that he would be on probation indefinitely, he would not have accepted the job. N.T. 10/16/86, at 220.

Roundy accepted the job with the News and commenced his employment on July 14, 1980. In doing so, he quit his job at Barney Rabin Company and turned down an employment offer from Tracon Company in Charlestown, Massachusetts. In addition, the Roundys sold their house in Massachusetts and purchased a house in Hollidaysburg. Roundy borrowed $15,435.96 from the News to purchase the Hollidaysburg house. On October 4, 1980, Mrs. Roundy moved. into that house. On October 25, 1980, Roundy's employment with the News was terminated.

The News argues that the presumption of employment at will was not overcome, because the evidence failed to show that Barnhardt and Roundy intended to form a contract for a reasonable period of time. Employment is presumed to be at will. *Geary v. United States Steel Corp.*, 456 Pa. 171, 175, 319 A.2d 174, 176 (1974). However, the parties' intent is a question for the jury. *DiBonaventura v. Consolidated Rail Corp.*, 372 Pa.Super. 420, 425, 539 A.2d 865, 868 (1988).

The existence of additional consideration is relevant in ascertaining the parties' intent that the contract would not be terminable at will. *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 552, 526 A.2d 1192, 1201 (1987), *alloc. denied*, 517 Pa. 607, 536 A.2d 1331 (1987); *Marsh v. Boyle*, 366 Pa.Super. 1, 5, 530 A.2d 491, 493 (1987). Additional consideration exists when an "employee undergoes a substantial hardship other than the services which he is

hired to perform." *Darlington v. General Electric*, 350 Pa.Super. 183, 201, 504 A.2d 306, 315 (1986). "When sufficient additional consideration is present, an employee should not be subject to discharge without just cause for a reasonable time." *Veno v. Meredith*, 357 Pa.Super. 85, 102, 515 A.2d 571, 580 (1986). Whether an employee has given additional consideration sufficient to rebut the at-will presumption is a question of fact for the jury. *Scullion v. EMECO Industries, Inc.*, 398 Pa.Super. 294, 298, 580 A.2d 1356, 1358 (1990).

 Having thoroughly reviewed the record, we agree with the trial court that sufficient evidence was presented by Roundy to support the jury's finding that an implied contract for a reasonable period of time existed between Roundy and the News. By quitting his job at Barney Rabin Company, rejecting the job offer from Tracon, selling his Massachusetts house, and purchasing a home in Pennsylvania, Roundy provided additional consideration sufficient to rebut the at-will presumption. Moreover, Roundy's statement that he needed six months to become effective and Barnhardt's agreement to give Roundy time to "get into" the job indicate the parties' intent to enter into a contract of employment for a reasonable period of time. Accordingly, the evidence is sufficient to support the jury's finding that the at-will presumption was overcome.

### III. JURY INSTRUCTIONS

 The Roundys, in their appeal from the judgment entered against them at No. 2045 C.P. 1980, argue that the trial court erred in instructing the jury on the presumption of spousal liability in regards to entireties property. This instruction was erroneous, the Roundys contend, because, at the time Roundy signed the I.O.U. for the loans from the News, the Hollidaysburg property was not yet owned by Mr. and Mrs. Roundy. The Roundys contend that the trial court erred in 1) refusing to give certain of their requested

instructions;[3] and 2) instructing the jury on the entireties presumption.

In reviewing a trial court's instructions to the jury, we must view the court's charge in its entirety to determine whether prejudicial error was committed. *Cooper v. Burns*, 376 Pa.Super. 276, 283, 545 A.2d 935, 938 (1988), *alloc. denied*, 522 Pa. 619, 563 A.2d 888 (1989) [*citing Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 576, 475 A.2d 1314, 1316 (1984)]. A trial court need not instruct the jury using the precise language submitted by the parties. Rather, the trial court must accurately define the issues and correctly review the applicable law. *Cooper*, 376 Pa.Superior Ct. at 283, 545 A.2d at 938 [*quoting Spearing v. Starcher*, 367 Pa.Super. 22, 29, 532 A.2d 36, 40 (1987)].

In the instant case, the trial court instructed the jury on the entireties presumption, in pertinent part, as follows:

[O]rdinarily, no agency is to be inferred as between husband and wife.... Now there are limited exceptions to that general rule. One is with regard to entireties property. Now by entireties property, I simply mean property which is owned or to be owned jointly by both husband and wife in their joint names. Now with regard to an entireties property, ... there may be a rebuttable presumption that during the term of a marriage either spouse has the power to act for both without specific authorization, so long as the benefits of such action inure to both.... [I]f you find that ... Mrs. Roundy, knew or should have known that ... Mr. Roundy was about to borrow money from News Printing Company, in aid of or

3. The Roundys argue that the court erred in failing to give their requested instructions numbered one, two, and six. Our search of the record certified to this Court has located no copy of the instructions requested by the Roundys. It is an appellant's duty to provide a record which is sufficient to allow meaningful appellate review. *Commonwealth v. Williams*, 357 Pa.Super. 462, 466, 516 A.2d 352, 354 (1986). Since the Roundys have failed to provide us with a copy of their requested jury instructions, we are precluded from reviewing this issue.

to facilitate the acquisition or purchase of property to be placed in both of their names, and if you find also that the borrowing spouse, Mr. Roundy, intended at the time to act also on behalf of his wife, then it is presumed that the spouse who so borrowed, Mr. Roundy, had the authority to act for and to bind his spouse to repayment of the borrowed money, unless ..., Mrs. Roundy, or her husband, produced evidence to prove that the borrowing spouse was in fact not so authorized.

N.T. 10/17/90, at 391–393. The Roundys contend that the above instruction was erroneous because, at the time the loan was made, the Roundys did not own the Hollidaysburg property and, thus, were not tenants by the entirety of that property.

We conclude that the trial court did not err in instructing the jury on the entireties presumption. In *J.R. Christ Construction Co. v. Olevsky*, 426 Pa. 343, 232 A.2d 196 (1967), the husband, without his wife's knowledge, contracted with a construction company to make improvements on the spouses' entireties property. In holding that the wife was also liable on the contract, the Court defined the entireties presumption as follows:

> The presumption ... with respect to properties held by the entireties, is that during the term of a marriage, either spouse has the power to act for both, without specific authority, *so long as the benefits of such action inure to both.*

*J.R. Christ*, 426 Pa. at 349, 232 A.2d at 199 (emphasis added). In the instant case, the money which Roundy borrowed from the News was used to purchase the Hollidaysburg entireties property, as opposed to improving existing entireties property. However, based on the particular circumstances of the instant case, this distinction does not make the entireties presumption inapplicable.

Mrs. Roundy was aware of and involved in both the sale of the Massachusetts house, which was entireties property, and the purchase of the Hollidaysburg house, which was also entireties property. Mrs. Roundy looked at the Holli-

daysburg house, approved of its purchase, and signed the mortgage to finance its purchase. She placed an ad to sell the Massachusetts house, showed it to potential buyers, and sold it. Since the purchase of the Hollidaysburg house closed prior to the sale of the Massachusetts house, the Roundys had discussed getting a "bridge" loan from a bank to pay the down payment on the Hollidaysburg property. Mrs. Roundy knew that her husband had paid the down payment on the Hollidaysburg property before the Massachusetts house was sold. However, she was unaware that Roundy had borrowed the money from the News.

The above evidence shows that Mr. and Mrs. Roundy had already decided to purchase the Hollidaysburg entireties property before the loan was made by the News. The evidence further shows that Mrs. Roundy agreed that her husband should purchase the Hollidaysburg property on September 30, 1980, before the Massachusetts property was sold and, consequently, before the money from the sale of the Massachusetts house could be used as a down payment. Although Mrs. Roundy was unaware of the loan from the News, the loan was used to purchase entireties property already selected by the Roundys, and the benefit of the loan inured to both Mr. and Mrs. Roundy. Accordingly, the trial court did not err in instructing the jury on the entireties presumption. For the foregoing reasons, the judgments of the trial court are affirmed.

Judgments affirmed.