**Cheryl BEQUEATH, Plaintiff,**

v.

**L.B. FOSTER COMPANY, Defendant.**

**No. CIV.A. 3:03–228J.**

United States District Court,
W.D. Pennsylvania.

April 25, 2005.

Joel S. Sansone, Esq., Pittsburgh.

Ralph A. Finizio, Esq., Jeffrey R. Gordon, Esq., Houston, Harbaugh, P.C., Pittsburgh.

## MEMORANDUM OPINION AND ORDER

GIBSON, District Judge.

This case comes before the Court on L.B. Foster Company's (hereinafter "Defendant") Motion for Summary Judgment (Document No. 22) pursuant to Federal Rule of Civil Procedure 56. In consideration of the Defendant's Motion for Summary Judgment, Cheryl Bequeath's (here-

inafter "Plaintiff") Response to Motion for Summary Judgment (Document No. 31), the Defendant's Reply Brief in Support of Defendant's Motion for Summary Judgment (Document No. 35), and the record in the case *sub judice,* the Court shall deny the Defendant's Motion for Summary Judgment for the following reasons.

## JURISDICTION

Jurisdiction is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1331 based on federal question jurisdiction. Specifically, the Plaintiff has brought a claim at Count I under the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. § 623, *et seq.* This Court is empowered to exercise pendent jurisdiction of the Plaintiff's claims set forth in Count II under the Pennsylvania Human Relations Act (hereinafter "PHRA"), 43 P.S. § 951, *et seq.* pursuant to 28 U.S.C.A. § 1367. Jurisdiction is also invoked pursuant to 28 U.S.C.A. § 1343(4) and a notification of dismissal and right to sue letter was issued by the Equal Employment Opportunity Commission on or about July 16, 2003. (Document No. 1).

## FACTUAL BACKGROUND

The Plaintiff was employed by the Defendant from December 10, 1979 until August 21, 2002. (Document No. 1). Initially, the Plaintiff was hired as a secretary at the Defendants' Bedford facility[1] (Document No. 23); however, throughout Plaintiff's employment she held various positions within the Defendant company, "the last of which was office administrator." (Document No. 1). At the time Plaintiff's employment with the Defendant ended,

1. The Defendant is "engaged in manufacturing, fabricating and distributing products for the transportation, construction, utility and energy markets". (Document No. 23). Additionally, the Defendant maintains a "manu- facturing facility in Bedford, Pennsylvania (the Bedford facility) that fabricates bridge decking products." *Id.* The alleged discriminatory conduct giving rise to this civil action occurred at the Bedford facility.

the Plaintiff was fifty-seven years of age. *Id.*

In July of 2002, Mr. Jerry Oxford, assumed the position of Acting Plant Manager of the Bedford facility. (Document No. 23). When Mr. Oxford was hired, he also assumed the role of the Plaintiff's immediate supervisor and maintained that role from August 1, 2002 until the Plaintiff's employment with the Defendant ended, on or about August 21, 2002. (Document No. 1).

On or about August 11, 2002, the Plaintiff's husband, Alan Bequeath, contacted Fred Rose, who was then a foreman at the Bedford facility, to notify the Defendant that the Plaintiff would not be at work on Monday, August 12, 2002. (Document Nos. 1 & 23). Thereafter, on August 12, 2002, Mr. Rose contacted Mr. Oxford to relay Mr. Bequeath's message regarding the Plaintiff's absence from work. *Id.*

On August 12, 2002 the Plaintiff contacted her physician, Dr. Vincente Mendez, in order to obtain an excused medical absence. (Document No. 32, Foor Deposition, pp. 22–24). However, because Dr. Mendez was not in the office, the Plaintiff spoke to Ms. Nancy Foor, one of Dr. Mendez's staff members. *Id.* Ms. Foor stated to the Plaintiff that she would speak to Dr. Mendez regarding her request. *Id.*

Later on August 12, 2002, Dr. Mendez, authorized Ms. Foor to send a facsimile to the Defendant regarding the Plaintiff's absence. (Document No. 32, Affidavit of Dr. Mendez). Specifically, Dr. Mendez approved an unsigned medical authorization releasing the Plaintiff from work. *Id.* The facsimile consisted of a handwritten note from the office of Dr. Mendez on Dr. Mendez's prescription pad. (Document No. 23). The note stated the following: "Sheryl Bequeath to be off work for medical reasons from 8–12–02 to 8–28–02." *Id.* at 5. However, the authorization was un-

signed because Dr. Mendez was not in the office on August 12, 2002. *Id.*

Dr. Mendez maintains that although he did not personally examine the Plaintiff on August 12, 2002, Dr. Mendez consulted with Mr. Timothy Grant, a mental health care provider associated with Dr. Mendez's office. *Id.* Based upon Mr. Grant's recommendation to approve the Plaintiff's medical leave of absence, Dr. Mendez approved the facsimile that was transmitted to the Defendant on August 12, 2002. *Id.*

On August 13, 2002, Mr. Oxford contacted Dr. Mendez's office and discovered that Dr. Mendez was not in the office on August 12, 2002. (Document No. 23). Specifically, Ms. Foor told Mr. Oxford that Dr. Mendez did not see the Plaintiff on August 12, 2002. (Document Nos. 23 & 32).

On August 13, 2002, Mr. Oxford also contacted the Plaintiff and "indicated to her that the submission of the note from Dr. Mendez's office was not an acceptable excuse." (Document No. 23, p. 6). Plaintiff responded that "she understood that", and she then requested to take some vacation days. (Document No. 25, Bequeath Deposition, p. 74). Mr. Oxford permitted the Plaintiff to take vacation days for the remainder of the week of August 12, 2002; however, Mr. Oxford requested the Plaintiff to return to work on Monday, August 19, 2002. (Document No. 23).

On August 19, 2002, the Plaintiff met with Mr. Oxford at the Bedford facility. (Document No. 23). During the meeting, Mr. Oxford explained to the Plaintiff that the submission of the unsigned medical excuse on August 12, 2002 was unacceptable under the Defendant's policy for excused medical absences. *Id.* Furthermore, Mr. Oxford told the Plaintiff that the unsigned excuse constituted fraud, and the Defendant had a right to terminate the Plaintiff for its submission. *Id.*

On August 20, 2002, the Plaintiff met with Mr. Oxford and Tim Pace, the Defendant's General Manager for Bridge Products. (Document Nos. 23 & 31). During this meeting, Mr. Oxford presented the Plaintiff with a "last chance agreement". *Id.* (Document No. 25, Bequeath Deposition, p. 92.) The agreement[2] addressed the Defendant's "strict policy regarding attendance and reporting to work." (Document No. 24). The agreement also set forth the Defendant's strict policy against "falsification of records and providing misleading information". *Id.* Additionally, the agreement acknowledged the Plaintiff's alleged misconduct which violated the Defendant's policies. *Id.* For example, the last chance agreement presented to the Plaintiff included claims that "over the past several years, [Plaintiff's] attendance, dependability and hours of work have been far below acceptable", (Document No. 31), and that the Plaintiff "fax[ed] a [d]octor's note that was not signed nor authorized by the doctor." (Document No. 24).

In spite of the Plaintiff's alleged misconduct, the Plaintiff's "long service and candor ... encouraged [the Defendant] to offer [the Plaintiff] a last chance." (Document No. 24). Accordingly, the Defendant would not terminate the Plaintiff at that time, yet the "last chance ... [would] depend upon the sincerity of [the Plaintiff's] regret and ... pledge to dramatically improve [her] attendance and dependability and to avoid even the appearance of any impropriety and unprofessional judgment and conduct in the future." *Id.* Accordingly, Mr. Oxford presented the last chance agreement for the Plaintiff's signature, and the Plaintiff was informed that she could write whatever she wanted on the agreement. (Document No. 23). If the Plaintiff refused to sign the last chance agreement, then she would be immediately dismissed from her employment with the Defendant. (Document No. 24). The Plaintiff refused to sign the last chance agreement.

The Plaintiff refused to sign the agreement because she believed that the agreement contained inaccuracies regarding her work performance history and the current alleged misconduct. (Document No. 31). Specifically, the Plaintiff refused to sign the agreement because she claimed that she never exhibited an attendance or dependability problem during her employment with the Defendant. (Document Nos. 23, 25 & 31). Indeed, the Plaintiff stated to Mr. Oxford during the August 20, 2002 meeting that she had never been verbally warned about attendance or absenteeism as referenced in the last chance agreement. (Document No. 23).

Another reason that the Plaintiff refused to sign the agreement was her denial that she had committed a fraudulent act. (Document No. 25, Bequeath Deposition, p. 93). The Plaintiff asserts that she sought a doctor's excuse for legitimate personal reasons. (Document No. 31). Although Mr. Oxford asked the Plaintiff to explain the reason for her absence during the prior week, the Plaintiff did not elaborate on the reasons for her absence. *Id.* In fact, Mr. Pace told the Plaintiff during the meeting that she was not required to give specific information regarding the personal reasons for her absence. *Id.*

Later on August 20, 2002 after the Plaintiff refused to sign the last chance agreement, Mr. Oxford contacted Mr. Walt Howard with information upon which the last chance agreement was based. (Document No. 32, Oxford Deposition, p. 49; Document Nos. 23 & 31).

---

**2.** The record in the case *sub judice* indicates that the last chance agreement was drafted by Robert Howard, the Defendant's Vice President of Human Resources. (Document Nos. 23 & 31). However, Mr. Oxford provided Mr.

Miles, the former Plant Manager of the Defendant's Bedford facility. (Document Nos. 23 & 31). Mr. Miles indicated that he "never specifically warned [the Plaintiff] about absenteeism or attendance during the time he was her supervisor." (Document No. 23, p. 8). Thereafter, based upon Mr. Miles' statements, Mr. Oxford removed the following language from the last chance agreement: "You have been verbally warned about this behavior ..." and "As this is your second infraction ..." *Id.*

On August 21, 2002, Mr. Oxford and the Plaintiff met again at the Bedford facility. (Document No. 23). Mr. Oxford explained to the Plaintiff that he had spoken with Mr. Miles regarding the Plaintiff's employment history. *Id.* Mr. Oxford also stated that he revised the last chance agreement to remove references regarding verbal warnings or infractions. *Id.* However, Mr. Oxford still intended for the Plaintiff to sign the last chance agreement based upon the Plaintiff's alleged violation of the Defendant policies by engaging in dishonest behavior in having the medical excuse submitted from Dr. Mendez's office when she had not seen Dr. Mendez on August 12, 2002. *Id.*

Again, the Plaintiff refused to sign the last chance agreement. (Document Nos. 23 & 25). Specifically, the Plaintiff stated that she would not sign it because she was not guilty of fraud. (Document No. 25, Bequeath Deposition, p. 93). Realizing, however, that her employment was terminated because she failed to sign the agreement, the Plaintiff left work and returned at a later time to retrieve her personal belongings. *Id.*

Immediately after the Plaintiff was terminated, the Defendant hired Joy Bennett to fill the Plaintiff's position. (Document No. 31). Ms. Bennett is approximately twenty years younger than the Plaintiff. *Id.* At the time Ms. Bennett was hired, she had "less than one year of experience." *Id.*

## PROCEDURAL BACKGROUND

The Plaintiff filed a timely Complaint with the Equal Employment Opportunity Commission (hereinafter "EEOC") and the Pennsylvania Human Relations Commission (hereinafter "PHRC") alleging age discrimination. (Document No. 1). Thereafter, the Plaintiff received a Notice of Right to Sue from the EEOC on or about July 16, 2003. *Id.* Having exhausted her administrative remedies, the Plaintiff then filed a Complaint with this Court on October 14, 2003. *Id.* The Plaintiff's Complaint charges the Defendant with violation of the ADEA at Count I and the PHRA at Count II. *Id.*

On January 7, 2005, after discovery was completed, the Defendant filed a motion seeking summary judgment on both of the Plaintiff's claims. (Document No. 22).

## STANDARD

### A. Summary Judgment

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Similarly, summary judgment is improper so long as the dispute over the

material facts is genuine. *Id.* In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248–49, 106 S.Ct. 2505. In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute regarding material facts so as to require submission of the matter to a jury for resolution of the factual dispute, or whether the evidence is so one-sided that the movant must prevail as a matter of law.

To demonstrate entitlement to summary judgment, the moving party is not required to refute the essential elements of the cause of action. The moving party needs only to point out the absence or insufficiency of the evidence offered in support of those essential elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once that burden has been met, the non-moving party must identify affirmative evidence of record that supports each essential element of his cause of action. A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial. *See id.* If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment. Fed.R.Civ.P. 56(e).

### B. Discrimination Claims

■ The ADEA makes it unlawful, *inter alia,* for an employer to fire an employee who is at least forty years old because of his or her age. 29 U.S.C. §§ 623(a), 631(a). In order to prevail on an ADEA termination claim, "a plaintiff must show that his or her age 'actually motivated' and 'had a determinative influence on' the employer's decision to fire him or her." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir.2002)(*quoting Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). A plaintiff can meet this burden by presenting indirect evidence of discrimination that satisfies the three-step framework set forth in *McDonnell Douglas Corp., supra,* and clarified in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981),[3] or a plaintiff can "present direct evidence of discrimination that meets the requirements of Justice O'Connor's controlling opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)". *Fakete*, 308 F.3d at 337; *see also Walden v. Saint Gobain Corp.*, 323 F.Supp.2d 637, 644 n. 24 (E.D.Pa.2004).

■ In the case *sub judice,* the parties have provided the Court memoranda of law focusing only on a pretext theory of

---

**3.** In *McDonnell* and *Burdine,* the Supreme Court set forth a four-part test for construing claims of unlawful discrimination under Title VII; however, the burden-shifting analysis set forth by the Supreme Court applies not only to actions brought under Title VII, but it also applies to claims brought under the ADEA and ADA. See *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 666 (3d Cir.1999) (quoting *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir.1995)).

discrimination. A mixed-motive theory of discrimination is not addressed by either

party.[4] The Court further observes that the Defendant specifically states that there

4. Under a *Price Waterhouse,* mixed motives analysis, the plaintiff presents direct evidence of an employer's discriminatory animus. When there is strong evidence of an employer's unlawful motives for the employment action, "the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered [her] age." *Fakete,* 308 F.3d at 338. The Third Circuit has "regarded Justice O'Connor's [concurring] opinion [in *Price Waterhouse*] as controlling, *see Fakete,* 308 F.3d at 337 n. 2. In *Price Waterhouse,* Justice O'Connor offered guidance in her concurring opinion "on the type of evidence needed to make out a 'mixed-motives' case." She reasoned:

> [S]tray remarks in the workplace, while perhaps probative of [a discriminatory animus], cannot justify requiring the employer to prove that its [employment] decisions were based on legitimate criteria. Nor can statements by non[-]decisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard; ... *What is required is ... direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.*

*Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. at 1805 (O'Connor, J., concurring)". Quoted in *Starceski,* 54 F.3d at 1096(emphasis added)(internal citation omitted). The Third Circuit recognizes, however, that in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 2153, 156 L.Ed.2d 84 (2003), "the [Supreme] Court declined an opportunity to indicate which opinion in *Price Waterhouse* was controlling." *Monaco [v. American General Assur. Co.],* 359 F.3d [296] at 300 n. 5 [(3d Cir.2004)].

This Court also observes that the Supreme Court in *Desert Palace, Inc.* declined the opportunity to state whether its holding in *Desert Palace, Inc.,* applied to claims in the ADEA context. *Desert Palace, Inc.* addressed the post-trial issue of when a trial court should give a mixed motive jury instruction under 1991 Title VII amendments codified at 42 U.S.C. §§ 2000e–2(m). The Supreme Court determined that in the context of mixed motive discrimination cases under 1991 Title VII, "direct evidence of discrimination is no longer required to succeed on a mixed motive

theory, [however] the plaintiff must still present 'sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race ... was a motivating factor for any employment practice.' " *Walden,* 323 F.Supp.2d at 644 n. 24 (*quoting Desert Palace, Inc.,* 539 U.S. at 101–102, 123 S.Ct. 2148). Thus, whether the trial court should give a mixed motive jury instruction in a discrimination claim under 1991 Title VII depends upon whether the plaintiff presents strong sufficient evidence of discriminatory treatment. The Supreme Court reasoned that "circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc.,* 539 U.S. at 94, 123 S.Ct. 2148 (quoted in *Walker [v. Fred Nesbit Distributing Co.],* 331 F.Supp.2d [780] at 787 [(S.D.Iowa 2004)]). Consequently, the Supreme Court did not mention whether direct evidence was still required in order to proceed under a mixed motive theory of age discrimination, and, accordingly, whether direct evidence was still required in order to request a mixed motive jury instruction in an age discrimination case.

This Court further observes that the Supreme Court did not address the impact of *Desert Palace, Inc.* on the burden shifting approach set forth in its earlier decision, *McDonnell Douglas.* *See Cooper [v. Southern Co.],* 390 F.3d 695, 725 n. 17 (11th Cir.2004)]; *Roberson v. Alltel Information Services,* 373 F.3d 647, 652 (5th Cir.2004); *Walker,* 331 F.Supp.2d at 787. Consequently, the effect that *Desert Palace, Inc.* has on an analysis of discriminatory conduct continues to be a subject of debate in federal courts, with varying results. For example, some courts have concluded that *Desert Palace, Inc.* overrules or severely limits *McDonnell Douglas. See, e.g., Dare v. Wal–Mart Stores, Inc.,* 267 F.Supp.2d 987, 992 (D.Minn.2003)(the federal district court held that in light of the 1991 amendments to Title VII and the Supreme Court's decision in *Desert Palace, Inc.* district courts are no longer obliged to apply the *McDonnell Douglas* framework when considering a motion for summary judgment on a 'single motive' Title VII claim.); *Griffith v. City of Des Moines,* 2003 WL 21976027, at *12 (S.D.Iowa 2003) (the federal district court reviewing a race discrimination claim "agrees with the well-reasoned opinion in *Dare* and finds that a plaintiff may bring his Title VII claim 'accord-

is "no direct evidence of age discrimination in this case." (Document No. 23). Therefore, inasmuch as the Plaintiff at this time has only attempted to prove her age dis-

crimination claim only under a pretext theory through the use of indirect evidence, this Court's analysis will focus on the three-step, burden shifting analysis estab-

ing to the burdens articulated in [the] Civil Rights Act of 1991', without being confined to the strictures of the *McDonnell Douglas* burden-shifting framework."). According to the holdings in *Dare* and *Griffith*, in order to survive summary judgment a plaintiff must simply demonstrate that a genuine issue of material fact exists as to whether or not race was a motivating factor in an adverse employment action which a defendant suffered. *See also Griffith v. City of Des Moines*, 387 F.3d 733, 735–736(8th Cir.2004)(affirming the district court holding, stating that *Desert Palace, Inc.* involved a mixed motive jury instruction issue and did not impact the Eighth Circuit precedents regarding summary judgment review standards). Conversely, other courts determine that no conflict exists between the two Supreme Court decisions. *See, e.g., Herawi v. Ala. Dep't of Forensic Sciences*, 311 F.Supp.2d 1335, 1338 (M.D.Ala.2004); *Winter v. Bank of America, N.A.*, 2003 WL 23200278, at *3 (N.D.Tex.2003).

This Court observes that in the event a mixed motive theory of age discrimination is raised at some point in the proceedings prior to jury instruction, *see* n. 5, *supra*, this Court has also reviewed the analysis set forth in *Lloyd v. City of Bethlehem*, 2004 WL 540452 (E.D.Pa.2004) and *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305 (5th Cir.2004). Specifically, in *Rachid*, the Fifth Circuit Court of Appeals determined that the mixed motive analysis discussed in *Desert Palace, Inc.* in the context of a Title VII claim is equally applicable to the ADEA context. *Rachid*, 376 F.3d at 310–311 ("direct evidence of discrimination is not necessary to receive a mixed motives analysis for an ADEA claim [at the summary judgment stage]"). Similarly, the district court in *Lloyd* determined that in the age discrimination claim before the district court, the mixed motive analysis set forth in *Desert Palace, Inc.* modified the *McDonnell Douglas* analysis as it applied to an ADEA claim at the summary judgment stage. *Lloyd*, 2004 WL 540452 at *4–5. Specifically, both courts determined that the third step of the *McDonnell Douglas* analysis should "accommodate both pretext and mixed motive cases." *Lloyd*, 2004 WL 540452 at *4. The modified *McDon-*

*nell Douglas* analysis implemented in *Lloyd* and articulated in *Rachid* is as follows:

> [T]he plaintiff must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, 'the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).'

*Rachid*, 376 F.3d at 312 (*quoting Rishel v. Nationwide Mut. Ins. Co.*, 297 F.Supp.2d 854, 865 (M.D.N.C.2003)). Consequently, "[i]f plaintiff prevails in a mixed motive analysis, but defendant is able to prove that it would have taken the same action in the absence of the impermissible motivating factor, then plaintiff's remedies are limited to injunction relief, attorneys' fees and costs. Otherwise, plaintiff will be able to receive monetary damages as well." *Lloyd*, 2004 WL 540452 at *5 (*citing Dunbar v. Pepsi–Cola General Bottlers of Iowa*, 285 F.Supp.2d 1180, 1198 (N.D.Iowa 2003)), disagreed with by *Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir.2004).

In the case *sub judice*, the Court observes that the Plaintiff does not raise the issue of a mixed motive analysis with regard to this Court's analysis of the Defendant's motion for summary judgment. However, the Court recognizes that depending upon the evidence presented at trial, two additional issues may arise: (1) whether the Supreme Court's holding in *Desert Palace, Inc.*, applies to claims in the ADEA context; and (2) whether the holding in *Desert Palace, Inc.*, impacts the burden shifting approach set forth in *McDonnell Douglas* such that the Plaintiff is entitled to a modified jury instruction which includes a mixed motive theory of discrimination. While the Court need not resolve these issues at this time, the Court observes that these threshold issues have not been resolved by the Third Circuit Court of Appeals.

lished in *McDonnell Douglas*, and later clarified in *Burdine*.[5]

## C. Pretext Theory of Discrimination: Indirect Evidence

Pursuant to the framework set forth in *McDonnell Douglas/Burdine*, step one requires an ADEA plaintiff alleging unlawful termination "to present evidence sufficient for a reasonable trier of fact to find each element of a prima facie case." *Fakete*, 308 F.3d at 338 n. 3. Accordingly, the plaintiff must demonstrate the following by a preponderance of the evidence: (1) the discharged employee belongs to a protected class, (2) the discharged employee was qualified for the position and was performing at a level which met the legitimate expectations of the employer, (3) the discharged employee was not retained in the position, despite being qualified, and (4) the discharged employee ultimately was replaced by someone not in the protected class, permitting an inference of discrimination. *See Burdine*, 450 U.S. at 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. If a plaintiff establishes a prima facie case of discrimination, then the plaintiff reaches step two of the *McDonnell Douglas/Burdine* framework.

Under step two, the burden of production shifts and the defendant must present

---

**5.** The Court recognizes that a plaintiff need not elect to proceed under one of the two theories. *See Hankins v. City of Philadelphia*, 189 F.3d 353, 364 n. 6 (3d Cir.1999)(plaintiff's failure to present either pretext or mixed-motive arguments at summary judgment does not result in waiver). Instead, "the Court must decide whether one or both theories properly apply to his claims." *Walden*, 323 F.Supp.2d at 644 n. 24. However, as the Plaintiff in the case *sub judice* has attempted to prove her case solely through the use of indirect evidence, and the Plaintiff has presented sufficient evidence with respect to her unlawful termination claim to survive summary judgment under a *McDonnell Douglas/Burdine* theory, the Court need not consider whether her claim may proceed under a *Price Waterhouse* theory at this time. *See Fakete*, 308 F.3d at 339 ("As Fakete has presented sufficient evidence with respect to his unlawful termination claim to survive summary judgment under a *Price Waterhouse* theory, we need not consider whether that claim may proceed under a *McDonnell Douglas* theory."); *Monaco*, 359 F.3d at 300 ("Inasmuch as Monaco attempted to prove his case solely through the use of indirect evidence, our analysis will focus on the burden shifting framework of *McDonnell Douglas* as applied under the N[ew] J[ersey] L[aw] A[gainst] D[iscrimination].")

The Court also observes that although the Plaintiff has not raised the argument in her response to the Defendant's motion for summary judgment that a mixed motives analysis is appropriate in order to pursue her age discrimination case, the Court determines that the Plaintiff has not waived a mixed motive argument by failing to expressly raise it at this procedural posture of the case. *See Hankins v. City of Philadelphia*, 189 F.3d 353, 364 n. 6 (3d Cir.1999) (A district court should consider whether a plaintiff's claim should survive summary judgment under a *Price Waterhouse* analysis even if it is unclear whether the plaintiff raised the theory in response to a summary judgment motion.) Furthermore, the Court recognizes that "an employee [need not] elect to proceed on either a pretext or a *Price Waterhouse* theory at trial. Rather, [the Third Circuit has held] that an employee may present his case under both theories and the district court must then decide whether one or both theories properly apply *at some point in the proceedings prior to instructing the jury*." *Armbruster v. Unisys Corp.*, 32 F.3d 768 (3d Cir.1994) (quoted in *Starceski v. Westinghouse Electric Corp.*, 54 F.3d 1089, 1098 (3d Cir.1995)(The Third Circuit held that after all the evidence was presented during trial, Starceski was permitted to change his theory of recovery from pretext under *McDonnell Douglas/Burdine* to 'mixed motives' under *Price Waterhouse*.)); *See, e.g., Price Waterhouse*, 490 U.S. at 247 n. 12, 109 S.Ct. at 1788 n. 12; *id.* at 278, 109 S.Ct. at 1805 (O'Connor, J., concurring); *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 448 (8th Cir.1993)("Whether a case is a pretext case or mixed motives case is a question for the court once all the evidence has been received.")

evidence to rebut an inference of wrongdoing with evidence of a legitimate, non-discriminatory or non-retaliatory reason for the action taken. *Peter v. Lincoln Technical Institute, Inc.*, 255 F.Supp.2d 417, 424 (E.D.Pa.2002); *see also Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 199 (3d Cir.1996). If the defendant satisfies its burden and successfully rebuts an inference of wrongdoing with evidence of a legitimate, non-discriminatory reason for the action taken, then the plaintiff reaches step three.

Under step three, the burden of production shifts back to the plaintiff[6] who must present evidence of pretext "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108, 1113 (3d Cir.1997)(quoted in *Fakete*, 308 F.3d at 338); *see also Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994). In order to discredit the defendant/employer's proffered reason for discharging the employee, the plaintiff/employee must adhere to the Third Circuit's analysis regarding proof of pretext to show that discrimination existed:

> ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the ... plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'

*Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3d Cir.1995) (*quoting Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994)) (emphasis in original)(cited in *Kohn v. AT&T Corp.*, 58 F.Supp.2d 393, 406 (D.N.J.1999)). Consequently, the "burden of proof or risk of non-persuasion, including the burden of proving 'but for' causation or causation in fact, remains on the [plaintiff]." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 n. 4 (3d Cir.1995)(citing *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093); *see also Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 698 (3d Cir. 1995).[7]

Accordingly, it is on the standards set forth above that the Court has reviewed Defendant's Motion for Summary Judgment.

## DISCUSSION

The Plaintiff alleges that because of her age, the Defendant unlawfully discriminated against her and terminated her employment in violation of the ADEA (Count I) and PHRA (Count II). (Document No. 1). The ADEA provides in relevant part,

> ... [i]t shall be unlawful for an employer to ... discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1). Similarly, under the PHRA,

---

**6.** The plaintiff, of course, always retains the burden of persuasion.

**7.** In *Goosby v. Johnson & Johnson Med. Inc.*, 228 F.3d 313, 321 (3d Cir.2000), the Third

Circuit cautioned against granting summary judgments in favor of employers when intent is at issue, particularly in discrimination and retaliation cases.

... [i]t shall be unlawful discriminatory practice ... [f]or any employer because of the ... age ... of any individual ... to discharge from employment such individual.

43 P.S. § 955(a).

■ The Court observes that the Third Circuit Court of Appeals has determined that PHRA claims are to be analyzed according to the same standard as ADEA claims. *Connors v. Chrysler Financial Corporation,* 160 F.3d 971, 972 (3d Cir. 1998). Accordingly, the following analysis applies to both Count I and Count II of the Plaintiff's Complaint.

## A. Prima Facie Case

■ In order to establish a prima facie claim for age discrimination, a plaintiff must demonstrate that: 1) she was at least 40 years of age at the time of her discharge, 2) she was qualified for the position in question, 3) she was discharged from the position, and 4) the discharge occurred under circumstances giving rise to an inference of age discrimination. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also Duffy v. Paper Magic Group, Inc.,* 265 F.3d 163, 167 (3d Cir.2001). However, there is no requirement that an ADEA plaintiff must be replaced by someone younger than 40 years of age. *See Parrillo v. Lower Bucks County Joint Mun. Authority,* 2003 WL 23162434, *4 n. 17 (E.D.Pa.2003). Rather, a plaintiff has established a prima facie claim "if proof is shown that the favored person was younger than the plaintiff." *Id.* Establishing a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

In the case *sub judice,* the Defendant concedes in its Motion for Summary Judgment that the Plaintiff has established a prima facie case of age discrimination.

(Document No. 23, p. 9 n. 5). Rather, the Defendant asserts the following two defenses: (1) the Defendant "had an unchallenged, legitimate non-discriminatory reason to terminate Plaintiff"; and (2) there is no evidence "that the actions about which [the Plaintiff] complains were motivated by a desire to discriminate against her on the basis of age." *Id.* at p. 3. Accordingly, the Court determines that the Plaintiff has satisfied all four elements of her prima facie case, and the Court next addresses the Defendant's burden to offer a legitimate, nondiscriminatory reason for the Plaintiff's termination.

## B. Defendant's Legitimate, Nondiscriminatory Reason

The burden now shifts to the Defendant to offer a legitimate, nondiscriminatory reason for the Plaintiff's termination in order to rebut the presumption of discrimination established by her prima facie case. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. At this stage of the analysis, the burden that is shifted is that of production of evidence, not persuasion. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Also, this stage does not involve a credibility assessment in which the jury must weigh the evidence of discriminatory action against the reasons proffered for the employment action. Rather, it is sufficient that the Defendant introduce evidence which, if taken as true, would permit the jury to find that its proffered nondiscriminatory reason for the adverse action was legally sufficient to justify the action. *Id.*

In the case *sub judice,* the Defendant contends that the Plaintiff was terminated because she violated the Defendant's policies "by failing to contact her supervisor, Mr. Oxford, to notify him that she would

be absent". (Document No. 23, p. 10). Furthermore, the Defendant alleges that the Plaintiff submitted a fraudulent and misleading medical note in order to justify her absence. *Id.* Finally, in meetings designed to give the Plaintiff the opportunity to explain "her submission of the medical excuse", the Plaintiff refused to provide explanation. *Id.*

■ The Court determines that the Defendant has offered legally sufficient evidence to justify its actions for terminating the Plaintiff. Specifically, the failure of an employee to provide proper notice prior to an absence, and the failure of an employee to follow specific policies regarding excused absences would permit a jury to find that the Defendant's proffered nondiscriminatory reason for terminating the Plaintiff was justified. *See e.g., Bowen v. Parking Authority of City of Camden,* 2003 WL 22145814, \*21 (D.N.J.,2003.); *Goodson v. Cigna Ins. Co.,* 1990 WL 149223 (E.D.Pa. 1990). Accordingly, the Court accepts for the purposes of deciding Defendant's Motion for Summary Judgment that the Defendant has met its burden in step two of the analysis.

## C. Plaintiff's Proof of Pretext

Once the Defendant has stated a legitimate business reason for its employment action, the presumption of age discrimination established by the Plaintiff through her prima facie evidence "drops from the case." *Burdine,* 450 U.S. at 255 and n. 10, 101 S.Ct. 1089. The burden shifts once again to the Plaintiff to show that the Defendant's proffered reasons were simply pretextual.

The Plaintiff can establish pretext by demonstrating that discriminatory animus was the likely motivator for the adverse employment decisions or that the Defendant's "proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089; *Fuentes,* 32 F.3d at 764

(concluding that the plaintiff must offer evidence that allows a factfinder to reasonably infer that the defendant's proffered nondiscriminatory reason was either a post-hoc fabrication or otherwise did not actually motivate the employment action, i.e., the proffered reason is a pretext). In *Fuentes,* the Third Circuit Court of Appeals described this step as requiring the plaintiff to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action." *Fuentes,* 32 F.3d at 765. Furthermore, the evidence offered by the plaintiff may be either direct or circumstantial, and the plaintiff is not required to adduce evidence directly contradicting the specific reasons proffered by the defendant. *Antol v. Perry,* 82 F.3d 1291, 1300 (3d Cir.1996).

■ In the case *sub judice,* the Plaintiff presents several challenges to the Defendant's assertion that she was terminated because of her failure to properly notify her supervisor of her absence and her alleged fraudulent conduct regarding the unsigned medical excuse. Specifically, the Plaintiff argues that the Defendant failed to include material contested facts which demonstrate inconsistencies in the Defendant's proffered legitimate reasons for its adverse employment actions. The Court addresses these alleged factual omissions *seriatim.*

The Court addresses the Plaintiff's first challenge regarding the submission of the unsigned medical excuse. The Plaintiff notes that it was not she who submitted the excuse, rather it was her doctor's assistant, Ms. Foor, who sent the facsimile to the Defendant. (Document No. 31). Furthermore, the Plaintiff argues that although the Defendant argues otherwise, she did not encourage or bully Ms. Foor into sending the excuse. *Id.* Indeed, the Plaintiff asserts that the deposition testi-

mony of Ms. Foor contradicts the Defendant's argument that the Plaintiff somehow swayed the judgment of Ms. Foor or insisted that Ms. Foor send the unsigned medical excuse from the doctor's office.

The Plaintiff also observes that the Defendant's policy requiring a doctor's excuse for absences due to medical reasons does not also require that the doctor's excuse be signed. (Document No. 31). In fact, the Plaintiff argues that there is no written policy requiring a signed doctor's excuse. *Id.* Furthermore, the Plaintiff argues that the Defendant's assertion in its motion that the doctor's excuse was unauthorized is a direct contradiction of the testimony offered by Plaintiff's doctor, Dr. Mendez. *Id.* In fact, Dr. Mendez testified that he authorized the medical excuse after he consulted with a mental health care associate, Mr. Grant. *Id.* Therefore, the Plaintiff argues that the doctor's excuse was an authorized excuse and not fraudulent as the Defendant contends.

Next, the Plaintiff argues that the Defendant's reasons for presenting the Plaintiff with the last chance agreement are riddled with inconsistencies. (Document No. 31). For example, one of the Defendant's alleged reasons for drafting the last chance agreement was the Plaintiff's prior absenteeism and lack of dependability. *Id.* Indeed, as the Plaintiff notes, a last chance agreement infers that Plaintiff was previously cited for violating company policies, and that the Plaintiff was previously warned to alter her behavior based upon those infractions. *Id.* However, the Defendant withdrew those charges after a brief inquiry into the Plaintiff's prior work history. *Id.* Indeed, the Defendant discovered that the Plaintiff had never been cited or warned for violating attendance policies. (Document Nos. 23 & 31). Consequently, the Plaintiff argues that the presentation of a last chance agreement, which is based upon prior violations that never occurred,

is clearly inconsistent with the spirit of a *last chance* agreement.

In addition to the inconsistencies addressed by the Plaintiff, the Court observes another material contradiction in the record. Specifically, the Defendant presented the Plaintiff with the last chance agreement because of her alleged fraudulent conduct regarding the unsigned medical excuse. (Document No. 31). The Defendant maintains that Mr. Oxford discovered on August 13, 2002 that the Plaintiff's doctor was not in his office on August 12, 2002, the date the excuse was sent to the Defendant. *Id.* Allegedly, Mr. Oxford discovered Dr. Mendez's absence because he telephoned the doctor's office and spoke to Ms. Foor regarding the unsigned excuse. *Id.* Based upon the unsigned excuse, the telephone conversation with Ms. Foor, and the facts available to him at the time, the Defendant asserts that Mr. Oxford determined that the Plaintiff committed a fraudulent act. (Document No. 35).

Upon reviewing the record, the Court observes that in her testimony, Ms. Foor indicated that she often prepares notes memorializing conversations and attaches the notes to the patient charts. (Document No. 32, Foor Deposition, pp. 58–59). These notes help to "refresh" her memory. *Id.* at 59. With regard to the Plaintiff's chart, Ms. Foor attached a note stating that "Dr. Mendez was out of town at the time. Dr. Mendez was called at his location and granted a medical excuse as per Mr. Grant's request." *Id.* at p. 58. Furthermore, Ms. Foor testified that although she did not recall, she believes that she would have conveyed this information to Mr. Oxford on the date of his telephone call, August 13, 2002. *Id.* at p. 61. Nevertheless, Mr. Oxford denies having learned of Dr. Mendez's authorization until months later. (Document No. 35). Accordingly, the Court recognizes the dispute in the record concerning the material fact re-

garding whether Mr. Oxford was aware of Dr. Mendez's authorization prior to drafting the last chance agreement and prior to the Plaintiff's termination.

The Court determines that the Plaintiff has satisfied the second prong of *Fuentes* by demonstrating "weaknesses, . . . inconsistencies, . . . [and] contradictions" in the Defendant's proffered legitimate reasons for its actions. *Fuentes,* 32 F.3d at 765. The Plaintiff has established disputed issues of material fact regarding the Defendant's reasons for drafting the last chance agreement. The issue is material because the Defendant's reasons for presenting the Plaintiff with the last chance agreement are central to a determination of whether the Defendant's proffered reasons for her termination were pretextual. For example, if the Plaintiff was told that she was being terminated because of prior attendance violations, then the reason was pretextual in light of the Defendant's statements that no such prior violations had in fact occurred. Furthermore, if the Plaintiff was told that she was being terminated because of her alleged fraudulent medical excuse, then the reason was pretextual if it is determined that the Defendant was aware that Dr. Mendez authorized the issuance of the medical excuse.

Accordingly, the Court finds that these credibility issues and genuine issues of disputed material facts are clearly questions to be answered by the factfinder at trial rather than by the Court at the summary judgment stage. *See Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 901 (3d Cir.1987) (holding that the issue of pretext turned on defendant's credibility and was not appropriate for resolution via summary judgment). Therefore, the Court determines that the Plaintiff has successfully raised sufficient questions of material fact regarding the Defendant's statements about the reason for her termination in order to withstand the Defendant's Motion for Summary Judgment.[8] Defendant's Motion for Summary Judgment is denied.

An appropriate order follows.

### ORDER

AND NOW, this 25h day of April, 2005, in accordance with this Court's Memorandum Opinion, upon consideration of the Defendant's Motion for Summary Judgment (Document No. 22), the Plaintiff's Response to the Motion for Summary Judgment (Document No. 31), the Defendant's Reply Brief in Support of Defendant's Motion for Summary Judgment (Document No. 35), the record in the case *sub judice,* and pursuant to the Federal Rule of Civil Procedure 56, **IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment is **DENIED.**

---

8. The Court notes that because the Plaintiff's age discrimination claim has survived the Defendant's motion for summary judgment under a *McDonnell Douglas/Burdine* burden shifting analysis, the Court need not address at Plaintiff's age discrimination claim under a *Price Waterhouse* analysis at this time.