**Carr v. Immaculate Mary Nursing Home**

416

*Charles J. Galvin,* for plaintiff.

*Michelle K. Carson* and *Patrick R. Kingsley,* for defendants.

MOSS, *J.,* August 11, 2010—This matter concerns whether we erred in overruling defendants' preliminary objections in the form of a motion to compel arbitration.

## FACTS AND PROCEDURAL HISTORY

Plaintiff John Carr Jr. executor of the estate of John Carr Sr. commenced this action for negligence and wrongful death on January 15, 2010 against defendants Immaculate Mary Nursing Home, Catholic HealthCare Services of the Archdiocese of Philadelphia, and the Archdiocese of Philadelphia. Plaintiff alleges defendants failed to properly supervise Carr while he resided at Immaculate Mary Nursing Home Facility resulting in serious injuries leading to his death. (Complaint p. 8.) Carr was admitted on January 26, 2009 with symptoms of dementia including disorientation, confusion, decreased awareness, ambulatory deficits, impaired vision, and incontinence. (Complaint pp. 8-9.) Carr had a history of falling. *Id.* The facility offered a dementia program to "maintain optimum comfort and provide the highest quality of life possibly for resident with late stage dementia." (Complaint p. 7.) Residents would be housed on a secure dementia floor. *Id.*

On admission, Carr's wife executed a nursing facility admission agreement containing a binding, mandatory arbitration clause. (Admission agreement pp. 17-21.) Paragraph 1 of the agreement stated:

"This agreement is made by and between Immaculate Mary Home (facility), a Pennsylvania no-profit corporation and resident and his/her legal representative and or/ the individual who has access to resident's income and financial resources available to pay for nursing care (responsible person) for the provision of nursing services for John Carr (resident)."

The agreement defined "responsible person" as follows:

"Whereas, the responsible person may be the guardian, the agent under a valid power of attorney, or any person authorized by resident to serve as resident's responsible person."

Specifically, the arbitration clause provided that:

"Unless resolved or settled by medication, any claim that resident may have against the facility for any personal injuries sustained by the resident arising from or relating to any alleged medical malpractice, inadequate care, or any other cause or reason while residing in the facility, shall be settled exclusively by arbitration . . . resident and/or responsible party relinquish and give up the resident's right to a jury trial on any claims for damages arising from personal injuries to the resident which are submitted to arbitration under this agreement."

Carr's wife signed as the designated "responsible person" on Carr's behalf. Carr's wife did not have power of attorney, and had not been appointed legal guardian. On May 10, 2009, Carr exited his room on the dementia floor gained access to a utility room, opened the laundry chute hatch, tilted himself into it, and fell three stories into the basement. (Complaint p. 10.) Carr

sustained serious injuries and died on November 9, 2009. (Complaint p. 16.) Plaintiff then brought suit.

Defendants filed preliminary objections as a motion to compel arbitration on February 9, 2010. Plaintiff responded the arbitration clause was invalid because Carr's wife did not have authority to waive his right to a jury trial. (Plaintiff's answer to preliminary objections p. 5.) Defendants argued the agreement is valid because Carr's wife had apparent authority to act on his behalf. (Defendants' reply in further support of preliminary objections, p. 15.) After hearing on May 20, 2010, we overruled preliminary objections without prejudice to be raised as a motion for summary judgment once discovery was over and the record was complete. On June 25, 2010, defendants filed this appeal.

## DISCUSSION

We properly overruled defendants' preliminary objections. A written agreement to subject any existing controversy to arbitration, or a provision in a written agreement to summit to arbitration is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity relating to validity, enforceability or revocation. 42 Pa.C.S. §7303. To determine whether arbitration is appropriate, the court first asks if a valid agreement exists. *McNulty v. H&R Block Inc.,* 824 A.2d, 1267, 1272 (Pa. Super. 2004), citing *Keystone Technology Group Inc. v. Kerr Group Inc.,* 824 A.2d 1223, 1227 (Pa. Super. 2003). Second, the court inquires if said dispute is within the agreement's scope. *Id.*

In the instant case, the scope of the agreement was not at issue. As to validity for the agreement to bind Carr,

Carr's wife must have had authority to act for him. Carr's wife was not his legal guardian and she did not have power of attorney. Thus Carr's wife could only act on his behalf if an agency relationship existed between them.

An agency relationship can be created through actual authority, apparent authority or authority by estoppel. *Bolus v. United Penn Bank,* 363 Pa. Super. 247, 260, 525 A.2d 1215, 1221 (1987). Actual authority exists when granted expressly in writing signed by the principal. Authority by estoppel may exist when a principal, by his culpable negligence, permits an agent to exercise powers not granted to him. *Id.* Lastly, apparent authority exists where a principal, by words or conduct, leads people with whom the alleged agent deals to believe the principal has granted agent the authority he or she purports to exercise. *Turner Hydraulics Inc. v. Susquehanna Construction Corporation,* 414 Pa. Super. 130, 135, 606 A.2d 532, 535 (1992). An agent cannot, simply by his or her own words invest himself or herself with apparent authority. Such authority emanates from the principal's action and not the agent's. *Turnway Corporation v. Soffer,* 461 Pa. 447, 458, 336 A.2d 871, 876 (1975). An agency relationship does not arise from the marital relationship itself. *Bradney v. Sakelson,* 325 Pa. Super. 519, 523, 473 A.2d 189, 191, (1984). One spouse does not have the power to act as an agent for the other simply by virtue of marriage. *Id.*

We found persuasive the analysis of the Hon P. Stanton Wettick Jr. in *Hickman v. Woodhaven Care Center LLC.* In Hickman, the court evaluated preliminary objections as a motion to compel arbitration of a wrongful death and survival action. *Hickman v. Woodhaven Care*

*Center LLC,* Allegheny County Court of Common Pleas no. GD07-017988 (March 31, 2008). There, a husband executed a nursing home admission agreement containing an arbitration clause for his wife. *Id.* at 2. Wife had suffered a stroke and had no memory recall. *Id.* at 1. Hickman had no power of attorney and was not his wife's legal guardian. *Id.* at 5. The court found no conduct by Mrs. Hickman that could support a finding she had authorized her husband to act as her agent. *Id.* at 11. Thus, Woodhaven's motion to compel arbitration was denied. *Id.*

The burden of establishing an agency relationship rests with the party asserting it. *Basile v. H&R Block Inc.,* 563 Pa. 359, 367-68, 761 A.2d 1115, 1120 (2000). Whether a principal-agent relationship exists is ordinarily a jury question. If the facts generating the relationship are not disputed, the court may decide it. *Breslin by Breslin v. Ridarelli,* 308 Pa. Super. 179, 184, 454 A.2d 80, 82 (1982) citing *Juarbe v. City of Philadelphia,* 288 Pa. Super. 330, 335, 431 A.2d 1073, 1076 (1981).

In the instant case, there was no evidence of a writing expressly granting Carr's wife actual authority. There is no authority by estoppel because defendants offered no evidence Carr was negligent. Defendants offered no evidence showing Carr knew of the arbitration clause, authorized his wife to sign the agreement, or otherwise agreed to arbitrate. Defendents knew of Carr's diminished mental capacity, having admitted him to an area specifically designated for demential patients. In fact, defendants offered no evidence of Carr's conduct when the agreement was executed.

## CONCLUSION

Because defendants failed to provide sufficient evidence Carr's wife had authority to bind Carr to arbitration, we correctly overruled defendants' preliminary objections. However, by doing so without prejudice, we have allowed defendants the opportunity to conduct discovery and revisit the issue on summary judgment it warranted after the record is complete.