**Walton v. Kindred Hospital Philadelphia.**

*John Skrocki*, for appellants.
*Christopher Culleton*, for appelle.

## TERESHKO, *J.*, August 1, 2012—PROCEDURAL HISTORY

Defendants, Kindred Healthcare, Inc., Kindred Hospital East, LLC and Kindred Hospital Philadelphia appeal an order dated May 10, 2012, wherein this court overruled defendants' preliminary objections seeking to enforce an alternative dispute resolution agreement.

## FACTUAL BACKGROUND

Lakeysha Walton (hereinafter "plaintiff") and her mother, Nancy Walton, reside together in Trenton, New Jersey. (Supplemental mem. of law in support of prelim. objection of Kindred defs. to enforce the ADR agreement 2). Philadelphia is organized under the laws of the Commonwealth of Pennsylvania and is located in Philadelphia, PA. (Compl., ¶3). Defendant Kindred Hospital East, LLC is organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Philadelphia, PA. (Compl., ¶4). Defendant Kindred Healthcare, Inc. is a Delaware corporation with its principal place of business in Louisville, KY. (Compl., ¶5). Defendants Kindred Hospital Philadelphia, Kindred Hospital East, LLC and Kindred Healthcare, Inc. are collectively referred to herein as "Kindred defendants."

On January 13, 2010, plaintiff underwent a gastric bypass procedure at Robert Wood Johnson. (Compl., ¶10). Following her discharge on January 18, 2010, plaintiff began to experience abdominal pain and vomiting. (Compl., ¶11). Plaintiff returned to the Robert Wood Johnson emergency room on January 19, 2010 and was diagnosed with a bowel obstruction and gastric perforation. (Compl., ¶11). Plaintiff remained at Robert Wood Johnson from January

20, 2010 to February 12, 2010. (Compl., ¶12). During that time, plaintiff experienced loss of consciousness, renal failure and infection. (Compl., ¶12). As a result, plaintiff was intubated and became ventilator dependant. (Compl., ¶12). During her time at Robert Wood Johnson, plaintiff developed bedsores on her sacrum and buttocks. (Compl., ¶13).

On February 12, 2010, plaintiff was transferred to Kindred Hospital Philadelphia, where she remained until April 20, 2010. (Compl., ¶14). Plaintiff was thirty-six (36) years old at the time. (Dep. Tr. of Lakeysha Walton P. 7, 14). Plaintiff was in a coma at the time of her admission to Kindred Hospital Philadelphia. (Pl.'s supplemental mem. of law in opp'n to prelim. objections of Kindred Defs. 3). During plaintiff's time at Kindred Hospital Philadelphia, her bedsores worsened. (Compl., ¶15). Plaintiff contends that the bedsores worsened because of the harm that was caused at Robert Wood Johnson, and because of the negligent care provided at Kindred Hospital Philadelphia. *Id.*

On March 1, 2010, halway through plaintiff's stay at Kindred Hospital Philadelphia, plaintiff's mother, Nancy Walton, signed a voluntary alternative dispute resolution agreement (hereinafter "ADR agreement") as plaintiff's "legal representative." See voluntary alternative dispute resolution agreement P. 4. In addition, Nancy Walton signed the following forms on plaintiff's behalf: a HIPPA disclosure form; a medicare rights form; a receipt of Valuables form; and consent forms for a bronchoscopy, a blood transfusion, and a transfer to Albert Einstein medical center. (Supplemental mem. of law in supp. of prelim.

objection of Kindred defs. to enforce ADR agreement 3).

Despite the fact that plaintiff's mother signed the aforementioned documents presented to her by representatives of Kindred, plaintiff never gave her mother power of attorney and never authorized her mother to make decisions on plaintiff's behalf. (Dep. Tr. of Lakeysha Walton P. 15, L. 6-10; Dep. Tr. of Nancy Walton P. 18, L. 23). Additionally, Nancy Walton has never been granted authority by a court to act on her daughter's behalf. (Dep. Tr. of Nancy Walton P. 41, L. 12). Nancy Walton does not recall signing the ADR agreement nor does she recall anyone from Kindred Hospital Philadelphia explaining the ADR Agreement to her or asking whether she had power of attorney. *Id.* at P. 15, L. 14; P. 21, L. 5; P. 39, L. 17. Finally, Nancy Walton was under the impression that she was merely signing documents that gave Kindred Hospital Philadelphia permission to treat plaintiff and contends that if she had been advised otherwise, she would have refused to sign any documents waiving plaintiff's right to a jury trial. *Id.* at P.39, L. 11-21.

During plaintiff's stay at Kindred Hospital Philadelphia, she had no understanding of who was handling her admission paperwork. *Id.* at P. 10, L. 7; Dep. Tr. of Nancy Walton P. 34, L. 3. Nancy Walton never mentioned anything to plaintiff about signing paperwork at Kindred Hospital Philadelphia. *Id.* at P. 12-13. Plaintiff never read the ADR agreement nor was she made aware of the significance of the agreement. *Id.* at P. 11-12. In fact, plaintiff was not aware that the agreement included a waiver of her right to a jury trial until two years after plaintiff was discharged. *Id.* at P. 12, L. 1. Moreover, plaintiff was never asked to sign

an ADR agreement during her stay at Kindred Hospital Philadelphia. *Id.* at P. 15, L. 3.

On January 12, 2012, plaintiff commenced this negligence action by filing a complaint in the court of common pleas of Philadelphia County. See docket. Robert Wood Johnson filed preliminary objections to plaintiff's complaint on February 13, 2012. *Id.* Plaintiff filed an answer on March 2, 2012, and Robert Wood Johnson filed a reply on March 5, 2012. *Id.* On March 20, 2012, the court sustained Robert Wood Johnson's preliminary objections as to jurisdiction and dismissed this action as to Robert Wood Johnson, with prejudice. *Id.*

On February 10, 2012, Kindred defendants filed preliminary objections to plaintiff's complaint as a motion to compel arbitration/mediation. *Id.* Plaintiff filed an answer on February 21, 2012. *Id.* On March 21, 2012, the court ordered the parties to conduct discovery by deposition on the issue of whether plaintiff's mother had the necessary authority to execute the referenced ADR agreement. *Id.* On April 30, 2012, plaintiff filed a memorandum in opposition of Kindred defendants' preliminary objections. *Id.* Kindred defendants filed a brief in support of preliminary objections on May 1, 2012. *Id.* On May 10, 2012, after review of Kindred defendants' preliminary objections to plaintiff's complaint, plaintiff's response thereto and the parties' supplemental memoranda, the court overruled Kindred defendants' preliminary objections and ordered Kindred defendants to file an answer to plaintiff's complaint within twenty (20) days of the date of the order. *Id.* Appellants filed an answer with new matter in opposition to plaintiff's complaint on

May 25, 2012. *Id.* On May 23, 2012, Kindred defendants (hereinafter, "appellants") timely filed an appeal from the May 10, 2012 order. *Id.* Appellants filed their rule 1925(b) statement of errors complained of on appeal on June 29, 2012. *Id.*

The issue for appeal is whether the court erred in refusing to enforce the ADR agreement because the plaintiff's mother did not have the authority to execute the agreement.

## LEGAL ANALYSIS

"A written agreement to subject any existing controversy to arbitration, or a provision in a written agreement to submit to arbitration is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity relating to validity, enforceability or revocation." 42 Pa.C.S. § 7303. Courts apply a two-part test to determine whether arbitration is required. *Midomo Co., Inc. v. Presbyterian Hous. Dev. Co.*, 739 A.2d 180, 186 (Pa.Super. 1999). First, the court must determine whether a valid agreement to arbitrate exists between the parties. *Id.* Second, if such agreement does exist, then the court must determine whether the dispute involved is within the scope of the agreement. *Id.* In the instant case, the scope of the agreement is not at issue.

With respect to validity, the agreement is only binding upon the plaintiff if her mother had authority to act on her behalf. *Carr v. Immaculate Mary Nursing Home*, 15 Pa. D. & C. 5th 415 (Phila. Cty. 2010). Plaintiff never gave her mother power of attorney and never authorized her mother to make decisions on her behalf. (Dep. Tr. Of Lakeysha

Walton P. 15, L. 6-10). Therefore, Nancy Walton could only act on plaintiff's behalf if an agency relationship existed between them. *Id.*

The burden of establishing an agency relationship rests with the party asserting it. *Basile v. H&R Block, Inc.*, 563 Pa. 359, 367, 761 A.2d 1115, 11120 (2000). An agency relationship may be created in one of four ways: express authority, implied authority, apparent authority and authority by estoppel. *Bolus v. United Penn Bank*, 363 Pa. Super. 247, 259-60, 525 A.2d 1215, 1221 (Pa. Super. 1987). Express authority exists when a principal expressly grants authority directly to an agent as to certain matters. *Id.* Implied authority binds a principal to those acts of the agent that are "proper, usual and necessary" in the exercise of the agent's express authority. *Passarelli v. Shields*, 191 Pa. Super. 194, 156 A.2d 343 (1959). Apparent authority arises where a principal, "by words or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority" that the agent purports to exercise. *Turner Hydraulics, Inc. v. Susquehanna Constr. Corp.*, 414 Pa. Super. 130, 135, 606 A.2d 532, 535 (1992). Such authority emanates from the principal's action and not that of the agent. *Jennings v. Pittsburg Mercantile Co.*, 414 Pa. 641, 645, 202 A.2d 51, 54 (1964). Finally, authority by estoppel occurs when a principal fails to supervise the affairs of his agent thus allowing the agent to exercise authority not granted to him. *Apex Financial Corp. v. Decker*, 245 Pa. Super. 439, 444-45, 369 A.2d 483, 486 (1976). If the principal fails to take reasonable measures to protect himself and third parties dealing with an agent from harm caused by the agent, then the principal may be estopped from denying the authority

of the agent. *Reifsnyder v. Dougherty*, 301 Pa. 328, 152 A.98 95 (1930).

The facts in *Carr* are similar to those presented here. In *Carr*, the honorable Sandra Mazer Moss overruled the defendants' preliminary objections seeking to compel arbitration because the defendants did not provide sufficient evidence that the deceased's wife had authority to bind her husband to arbitration. 15 Pa. D. & C.5th 415 (Phila. Cty. 2010). Upon Carr's admission to Immaculate Mary Nursing Home, Carr's wife executed a nursing facility admission agreement containing a binding, mandatory arbitration clause.[1] *Id.* at 417. Carr's wife did not have power of attorney and had not been appointed legal guardian. *Id.* at 418. Several months later, Carr exited his room on the "secure dementia floor," gained access to the laundry chute, and fell three stories into the basement. *Id.* Carr sustained serious injuries and ultimately died. *Id.* at 419. The executor of Carr's estate subsequently filed suit for negligence and wrongful death. *Id.* at 417.

The defendants in *Carr* filed preliminary objections to compel arbitration. *Id.* at 419. The plaintiff responded that the arbitration clause was invalid because Carr's wife did not have authority to waive his right to a jury trial. *Id.* The defendants argued that the agreement was valid because Carr's wife had apparent authority to act on his behalf. *Id.* Judge Moss overruled the defendants' preliminary objections, finding that Carr's wife did not have authority to bind Carr to arbitration. *Id.* at 422. First, the defendants

---

1. Carr was admitted with symptoms of dementia including disorientation, confusion, decreased awareness, ambulatory deficits, impaired vision, and incontinence.

failed to produce evidence of a writing expressly granting Carr's wife actual authority. *Id.* at 421. Second, there was no apparent authority because defendants offered no evidence of Carr's conduct when the agreement was executed. *Id.* Defendants offered no evidence indicating that Carr was aware of the arbitration clause, authorized his wife to sign the agreement, or otherwise agreed to arbitrate any disputes. *Id.* Moreover, defendants were aware of Carr's diminished mental capacity, having admitted him to a program specifically designed for dementia patients. *Id.* Finally, there was no authority by estoppel because defendants offered no evidence that Carr was negligent. *Id.*

Here, appellants have similarly failed to satisfy the burden of establishing an agency relationship. First, the appellants have offered no evidence of a writing expressly granting Nancy Walton actual authority. Second, appellants have not produced any evidence demonstrating that plaintiff was aware of the ADR clause, authorized her mother to sign the agreement, or otherwise agreed to arbitrate any disputes. Moreover, appellants were aware that plaintiff was in a coma upon her admission to Kindred Hospital Philadelphia and have failed to offer any evidence of plaintiff's conduct at the time the ADR agreement was executed. On the contrary, the deposition testimony of both plaintiff and her mother clearly and unequivocally indicates that plaintiff was not aware of the arbitration clause, did not authorize her mother to sign the ADR agreement, or otherwise agree to arbitrate any disputes. As such, no agency relationship existed between plaintiff and her mother. Therefore, plaintiff's mother did not have authority to sign the ADR agreement.

Moreover, this court's order dated May 10, 2012 is not properly subject to appeal because the order fails to satisfy the requirements of the Pennsylvania rules of appellate procedure. Pennsylvania permits appellate review of four types of orders: (1) final orders, (2) interlocutory orders from which an appeal exists as of right; (3) interlocutory orders, which may be appealed by permission; and (4) collateral orders. *Mother's Restaurant Inc. v. Krystkiewicz*, 861 A.2d 327 (Pa. Super. 2004). The current case does not fall within the requirements of any of these categories and therefore, this appeal should be quashed.

According to Pennsylvania Rule of Appellate Procedure 341, final orders are those which either (1) dispose of all claims and all parties, (2) are explicitly defined as final orders by statute, or (3) are certified as final orders by the trial court or other reviewing body. Pa.R.A.P. 341. Here, the court's order does not fall into any of these categories. First, the order does not eliminate any of the claims or any of the parties. Second, no statute defines the order at issue in this case as a final order. Second, rule 341 enunciates a "partial list" of orders that have been interpreted by the courts as appealable as final orders under the old Rule 341 but are no longer appealable under the amended version of rule 341. See *Id.* Among those order listed is "an order dismissing a counterclaim but leaving pending the complaint which initiated the action." *Id.* The present order presents a similar situation; this court's order dismissed appellants' preliminary objections, but left the initial negligence action pending. Cf. *Continental Bank v. Andrew Bldg. Co.*, 436 Pa. Super. 559, 648 A.2d 551 (holding that order striking appellant's counterclaim was not appealable as a final order because initial mortgage

foreclosure action remained pending). Finally, this court did not certify the order as final. As such, this order is not appealable as a final order.

Pennsylvania rule of appellate procedure rule 311 enumerates interlocutory orders to which a right of appeal attaches. See Pa.R.A.P. 311. An order overruling preliminary objections in a negligence case, however, does not constitute a basis for an interlocutory appeal as of right within this rule. See *Id.* As such, the order is not subject to appeal under this provision.

Permission to appeal from an interlocutory order may be granted pursuant to section 702(b) of the judicial code. *Continental Bank,* 436 Pa. Super. at 568, 648 A.2d at 555. Section 702(b) requires the order to contain the trial court's certification that "such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter..." 42 Pa.C.S.A. § 702(b); Pa.R.A.P. 312, 1311. Moreover, Pennsylvania Rule of Civil Procedure 1311(b) requires the appellant to file a petition for permission to appeal with the appellate court within thirty (30) days after entry of such order in the trial court. See Pa.R.A.P. 1311(b). Here, the court's order does not contain the requisite language pursuant to section 702(b), nor did Kindred defendants file a petition for permission to appeal. Therefore, the order is not appealable under this provision.

Finally, Pennsylvania rule of appellate procedure 313 specifically allows for appeals from collateral orders as of right, (1) "where the order is separable from and collateral

to the main cause of action," (2) "where the right involved is too important to be denied review," and (3) "the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). Rule 313 should be interpreted narrowly, and each prong must be undoubtedly fulfilled for an order to be considered collateral. *Melvin v. Doe*, 575 Pa. 264, 272, 836 A.2d 42, 46-47 (2003). Any order asserted to be collateral must satisfy all three prongs to be subject to appellate jurisdiction. *Rae*, 602 Pa. at 72, 977 A.2d at 1125.

Here, appellants only satisfy the first rule 313 requirement. For the first prong of analysis under Rule 313(b), the court must determine whether the issue(s) raised in the order "are separable from the central issue" of the ongoing litigation. *In re J.S.*, 980 A.2d 117, 121 (Pa. Super. Ct. 2009). Here, the court's order is separable from, and collateral to, plaintiff's main cause of action because the enforceability of the ADR agreement does not determine or resolve any of the ultimate issues in this case, i.e., whether appellants engaged in negligent conduct.

Nonetheless, appellate review is impermissible here because the second prong of Rule 313(b) is not satisfied. With regard to the second prong, it is not enough that the issue is important to the parties. "Rather it must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209, 1214 (1999). Moreover, "an issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests

sought to be advanced by the final judgment rule."[2] *Id.* at 1213, quoting *In re Ford Motor Company*, 110 F.3d 954, 959 (3d Cir. 1997). Here, the court's order invalidating the ADR agreement does not involve a right "too important to be denied review" because the parties' rights and obligations under the ADR agreement only impact the parties to this litigation. See *Pennsy Supply, Inc. v. Mumma*, 2007 Pa. Super. 77, 921 A.2d 1184 (2007) (holding that an order granting defendants' preliminary objections and instructing the parties to proceed to arbitration to determine their rights pursuant to a lease agreement did not involve a right "too important to be denied review" because the parties' rights and obligations under the contract only impact[ed] the parties to [the] litigation"). Moreover, defendants contend that arbitration is "the preferred process for dispute resolution in the Commonwealth of Pennsylvania" due to the congestion of court dockets throughout Pennsylvania. (Prelim. objections of Defs. to Pl.'s Compl. 5). While arbitration may promote efficiency at the trial level, the increased costs associated with appellate litigation may negate the benefits associated with arbitration. Cf. *Geniviva*, 555 Pa. at 598, 725 A.2d at 1214 (1999) (holding that any efficiencies achieved in allowing appeals as of right from orders denying enforcement or approval of settlement agreements would be negated by increased appellate litigation). As such, the right involved in the present case is not too important to

---

2. An interlocutory appeal can "threaten [trial proceedings] with delay, adding costs and diminishing coherence." An interlocutory appeal "also risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeal that, had the trial simply proceeded, would have turned out to be unnecessary." *Johnson v. Jones*, 515 U.S. 304, 308, 115 S.Ct. 2151, 2154 (1995).

be denied review.

Finally, the order at issue is improper for appellate review because the third prong is not satisfied. To satisfy the third prong of rule 313, the issue sought to be appealed must actually be lost if trial review is postponed. *Keefer v. Keefer*, 741 A.2d 808 (Pa. Super. Ct. 1999). "Orders that make a trial inconvenient for one party or introduce potential inefficiencies, including post-trial appeals of orders and subsequent retrials, are not considered as irreparably lost." *Id.* at 813. Here, the court's order effectively precludes appellants from satisfying this requirement. By requiring the parties to continue trial litigation, the court's order ensures that appellants' claim is not "irreparably lost." As such, this court's order dated May 10, 2012 is not subject to appellate review. This appeal does not satisfy the requirements of the Pennsylvania rules of appellate procedure and should therefore be quashed.

## CONCLUSION

For the foregoing reasons, this court respectfully requests that its decision to overrule appellants Kindred Healthcare, Inc., Kindred Hospital East, LLC and Kindred Hospital Philadelphia's preliminary objections seeking to enforce the alternative dispute resolution agreement be affirmed.